Good morning. I'm William Simpich. I'm appearing on behalf of the plaintiffs, and I'm requesting five minutes to be reserved for rebuttal. I'd like to begin by addressing what I think are the two central points of this entire litigation. The first one is the methodical failure by the Sonoma County parties to have any reference to the medical status of these patients in the warrant. And the second is the inability to make any reasonable distinction between what happened in Arcata the year previous versus what happened in Sonoma, except for the fact in Sonoma they brought the federal agents along to take the pot. That's really the only difference between these two instances, and most of this information was in the hands of Sonoma. Officer Lucas held back certain key parts of the information, which I'll address in a minute. So turning to the medical status omission in the warrant, it's central. If you look at the warrant, you will see that there's references to Mr. Brown being involved and being a director of the clubs. But that means absolutely nothing. It's of no import whatsoever in any finding of probable cause. It doesn't help nor hinder. It's simply a nullity. And they had every piece of information they needed, the Sonoma defendants, to notify the judge that yes, over 300 plants have been found in these people's custody in Arcata, that no action was taken by the district attorney, and that there's no essential difference between, again, what happened in Arcata and what happened in Sonoma, except for the presence of the feds to take the pot. Now what Officer Lucas neglected to mention was that the cannabis equipment was in fact given back to Brown and company pursuant to a court order, which was opposed by Officer Lucas. Now that particular information was squarely in the hands of Officer Lucas, and it's our contention that he had the duty to inform Sonoma of this information because that information was not in that bulk of documents that he provided. Now another aspect that should be looked at in terms of the warrant itself is the role of this informant. The role of the informant was one of a thief, essentially, who was talking to the cops, trying to make some kind of statement to them, probably for, most certainly for currying favor. And this is precisely the type of testimony that is generally given the least weight in a warrant. This is not some upstanding citizen informant. This is not a law enforcement informant. This is a thief currying favor. And in this context, he provided or she provided no important information of any kind. Certainly nothing firsthand. And it's uncorroborated by the time of the first warrant, and it's stale. It's April and the first warrant is issued in June, the last one is issued in And in this context, all this informant hands the officers is a map saying here's the property. There's all these parcels. There's all these houses. There's all these buildings. But there's no showing as to where this pot is or how this person knows about it. It's simply blank. Another aspect of this warrant is the high electrical use allegation. This is essentially comparing nothing to nothing. And this is precisely what the Clark case at 31 F. Third states is impermissible. If you've got a claim that it's high, you have to offer some basis as to what you're measuring it against. And no such basis is offered, just the uncorroborated claim that it's, quote, high. Moreover, what does high mean in this context? There's no accident here about whether or not this is a garden. This is, even in the PG&E forms, it says this is the LSB gardens. This is a horticulture and office type complex. So there's no hiding going on here whatsoever. In fact, the record even reflects that Mr. Brown, I think this is at ER 194, told the head of the sheriff's department, the sheriff himself, several months before his arrest, he said, what do I have to do to be in compliance? And the sheriff told Mr. Brown, as long as you are in compliance with the guidelines, which are 99 plants per person, there's no problem. And that was all there was to it. So what this keeps coming back to is kind of the obvious. One, as the Mallon case states at page 469, probable cause has to take into the calculus the fact that these people have a medical status. That doesn't mean, of course, that they're allowed to engage in unprotected activity as well as protected activity. And then, when we turn to their evidence, where's the evidence that they're engaging in any unprotected activity? There's no mention in here about the quantity that's being grown inside that barn. It could be one plant, it could be a thousand plants. There's simply no corroborating information about the quantity. And the quantity is what would drive this. If there's too high a quantity and there has to be some kind of showing, then they might have an argument. But there's no showing about quantity in any context. The only evidence we have about quantity is from the Arcata case, which shows that there was 148 plants in one room and 349 plants overall, and there was no arrest, there was no citation, and at the end of the day, the plants were returned to and the equipment was returned to Mr. Brown and his colleagues. So what we have here, I would submit, is a clear case of what would be politely called judicial deception. If the judge knew what this case was about and how identical this was with the case that had been resolved at great length in Arcata, it would have never got this far. Deputy Salas, for example, was given information that the chief of Arcata gave Mr. Brown an ID card, but she didn't put that in the warrant. Similarly, Officer Lucas, who handed over the documents, he did know a couple other things. He knew that the chief had, in fact, inspected the garden before that arrest and said that it was okay, but he didn't impart that information. Similarly, Officer Lucas knew that Mr. Brown was an expert on the subject of Prop 215, and in fact, he and Lucas had dueled as experts in a case between the Arcata case and the Sonoma case. He didn't impart that information to Salas and Gossett. That would have been critical information, and what we have here is, in essence, a situation where the judge was, to put it politely, he was bamboozled. He was not told the full import of what was going on here, and it's our submission that no judge would have ever issued that warrant. We're talking about a quantity of several plants to have been grown in that property at that time, but the facts, as they reveal themselves, show that there was no difference, essentially, between the number of plants in Arcata and the number of plants in Sonoma, but that gets a little ahead of the story because the heart of it is that no quantity was alleged or known or even suspected. It was simply, they're growing marijuana. Now, on the First Amendment issue, we think the First Amendment issue is central because we believe that that's really what drove this case. This case didn't come by accident, and we would ask the court to take a hard look at the showing in the Mendocino Environmental Center versus Mendocino County, the 192F3 case, because it's our contention that the facts are very similar. In that case, two Earth First activists were blown up by a bomb. The FBI and Oakland were both on the scene. The FBI knew these folks were Earth Firsters. Oakland didn't really know much about Earth First. The FBI turned to Oakland and said, we think these people are terrorists. We think these people are bad people, and Oakland went along with them, and as it turns out, these people were political organizers traveling from town to town, and the bomb was placed in a place where they could not have reasonably known it was there under the seat, and at the end of the day, Oakland was charged with First Amendment violations as well as Fourth Amendment violations for hindering their activity as political organizers. What's your best evidence of an intent to chill First Amendment activity? Well, there's a few, Your Honor. One key one is Officer Lucas's cutting of the go rights while in custody. Now, granted, he didn't say this to the Sonoma defendants regarding the Fourth Amendment issue, and maybe that wasn't relevant regarding the Fourth Amendment issue, but it certainly illustrates his motive. The documents that he gave to Salas and Gossett of Sonoma illustrate, there's lots of clippings in there, for example, that talk about Mr. Brown's public activities in support of Prop 215. It talks about how he was hanging Red Cross signs on his fence right in front of his pot plants in Tehama County. It talks about his news articles where he asserts his right to engage in this activity, and you see a little reference saying, poo, right next to it. You see the Attorney General going out to Tehama County, along with the DA and a bunch of other people, looking at Mr. Brown's plants and finding that he was not in violation of 215. In fact, this case illustrates the fifth time that his plants had been looked at by law enforcement, and the third time they'd been ripped out without an arrest occurring. Mr. Brown was never arrested for any of these activities done in support of Prop 215, but he was clearly taking an extremely public stance, and Salas and Gossett knew about this public stance from the materials that had been provided to you in Exhibit 1, etc., of the material that's under seal, which came from Lucas's file. So that's really the heart of it regarding Salas and Gossett. The news articles, the Red Cross signs, the DA's search and the other searches, and also the statement that's reflected right in the documents where the lawyer tells Lucas that this man is the most visible person in Humboldt County engaging in this activity. That's what the attorney told Lucas, and that document is in the files and referenced in the brief. So that's really the heart of where we see that all three of them knew. Now, Lucas's antipathy is quite clear. He refused to accept their recommendations based on the evidence. He cut the power cords. He caused headlines to be in the newspapers about them growing psychedelic mushrooms, which caused them to be evicted from the Arcata property. And, you know, not coincidentally, you see the same attempts to evict them from the Sonoma property at the hands of the officials made during this raid in July of 2002. They turn to the neighbors and they say, you ought to evict these people. You've got Lucas's knowledge of Brown making his living in part as being an expert. Why would he have antipathy? Well, it's pretty clear, you know, he's the adversary. At the same time, Mr. Brown is not inclined to break the law because he's an expert. He doesn't want to lose his opportunity to be an expert. This is all cogent, important information that needs to be taken into account. So that's really the heart of our argument. We think this is a classic case of judicial deception. We think Lucas was bound to tell them the key things about the cannabis equipment being returned pursuant to court order. That wasn't done. By the time this crazy document goes back and forth from DOJ, it looks like everybody's been arrested when, in fact, nobody's been arrested. Mr. Brown wasn't even on the scene. He was never arrested, detained, anything. Yet, the judge comes away from all this thinking he's a co-defendant and they've got a case on him and all this business. It's not right. Excuse me. Yes. I don't want to interrupt if you've got to. Yeah, I had made my point. How would you define the narrow issue that is before us for decision, just as succinctly as you can state it? I think the narrow issue, Your Honor, is whether or not a reasonable, any reasonable jury would agree that this judge was deceived by this warrant. What was that last sentence? Oh, I think the issue is whether any reasonable jury would find that the judge was deceived by the warrant Sonoma prepared with the assistance of Arcata. Thank you, counsel. Thank you. Well, you have about five minutes left. Do you want to reserve? I'll reserve. I just wanted to state that we want a right to amend with federal defendants. We think we've made a good case on official capacity. We've argued that long and hard. If not, we want the right to bring it back on the individual capacity claimant. Thank you. Do you have a time agreement? Good morning, Your Honor. My name is Bonnie Freeman, and I am appearing on behalf of the Starting with the claim of an intentional omission from the arrest warrant. The standard of review is clearly erroneous standards, a very high standard. It would require that the appellants give this panel some reason to believe that a, or make a firm determination, in fact, that a mistake has been made by Judge Breyer in the court below. His determination, taking into account all of the facts and circumstances that are before this court in the record, he concluded very clearly and succinctly, and taking into account a lot of evidence that wasn't presented in the warrants themselves, that the affidavits provided not only probable cause. At each stage, he analyzed the first stage, the June 12, 2002 warrant, which requested only the records of the PG&E. And then at the next stage, later in June, using the records that were obtained from PG&E, asking for a sneak and peek warrant, a warrant which would allow the officer simply to confirm the activity that they had information was occurring. And then finally, the search warrant. The judge found that there was no reason to believe that the statement referring to Jason Brown and the other plaintiffs, the other two primary plaintiffs as co-defendants, in light of the statement in which that word co-defendants was used, was not, there is no evidence that that was an intentional or reckless intent to deceive the magistrate. In fact, the sentence that the word co-defendants appears in says that they were co-defendants in a marijuana investigation. Obviously, you can't be a co-defendant in the technical sense of that word in an investigation. It would only apply to a prosecution. And in fact, the words that Andrea Salas used in her declaration was a marijuana investigation. The court found that that would not have had any impact on the magistrate issuing the warrant. With regard to whether probable cause existed, which is a different issue. First, we have the issue as was there an intentional omission, which is a clearly erroneous standard. This panel is to give great deference to Judge Breyer's conclusion that probable cause existed, even taking into account some of the evidence that was offered by the appellants down below, one of which was an expert opinion about whether or not someone could actually smell marijuana emanating from the barn or not. The court did not find that that was true or not true, but determined that he would disregard the fact of whether or not you could smell the marijuana. And just to clarify one point, the focus on the confidential informant, I think, is a bit misplaced. If you look at Andrea Salas' first affidavit for the records of PG&E, and then these facts are then restated in the following affidavits in chronological order. The facts that are stated in the affidavit are that detectives, excuse me, deputies had developed information that there was a marijuana grow operation, cultivation occurring in this area in Petaluma. The next step was that they confirmed this with a confidential informant. And the informant gave more than information that would help a thief or however it was characterized this morning. I don't think there was any reference in the record as to exactly what the confidential informant got or did not get out of providing this information. But the deputies went to the confidential informant, and they not only confirmed that there was cultivation occurring, they gave the names of the people doing it, and drew a map of where it was occurring. This is confirming information that the deputies had already previously developed. Then using the map and the information about the owners, the deputies went to the location. This is before the PG&E warrant, and they could smell marijuana around the area of the buildings. And they could hear the fans working, and they could see the lights working. They had a criminal history which showed a prior case initiated by the city of Arcata, albeit with the misnomers of a co-defendant used in Andrea Salas' affidavit. And they had received several reports regarding that previous involvement. They had new and included information that Jason Brown had been involved in two previous cannabis clubs and on the board of one. They also had a prior complaint regarding Jason Brown from the DEA group out of San Francisco. And then they did the investigation about who owned the property and discovered that Henry Bash, who was the owner of record of the property and the vehicles, and also in whose names two of the PG&E accounts were still being held, had died in February of 2002, months before this search warrant was executed. So there was plenty of probable cause to support the warrants. I would like to touch very briefly. We were trying to divide our time evenly, so I'm not sure. I would just like to take a minute to address the issue of whether or not an officer must include caregiver or patient status as part of a search warrant. The comparison of this case to the Mower decision, Judge Breyer found that the difference between the two cases is pivotal. And that is in Mower you're dealing with an arrest warrant. In this case you're dealing with a search warrant. You have to ask yourself, how on earth would law enforcement, who are trying to find out whether or not this is a situation in which there is marijuana being cultivated under the proper auspices of Prop 215 and meeting all of those requirements, without allowing the officers in to do that investigation? That's exactly why. Why wouldn't it have been relevant to include that information in the application of the warrant? Because then the judge can assess whether or not to sign it. If you omit the information, it looks like it's a straight cultivation for sale operation. And that's the impression you get from the application for the warrant. The cases that discuss the transient nature of both patient status and caregiver status are really what is at the heart of why this is not a material issue in a search warrant. A patient may be a patient for a month. A patient may be a patient for a year. A patient may be a medicinal marijuana user for the duration of their life. Mower and the application of the warrant. I'm sure you can say that in the application, too. But at least the judge is informed about the fact that there is evidence to support the fact that there is a medical use here and then can make an intelligent decision about whether to issue the warrant. I mean, that's the problem. Well, the difference is that if it were an arrest warrant, I would agree with you. Because the statute provides immunity from prosecution if you meet the certain requirements. This is a search warrant. And there is no prosecution. And so that evidence, while it certainly has been deemed and would be relevant in the arrest situation, in Mower they said really what you need to do is you can't run in with an arrest warrant. You have to make the steps and try and determine whether or not there are the requirements are met for a 215 exemption here. The whole point of going to a magistrate is that you want an independent judicial officer to assess whether there is probable cause to believe a crime is being committed. Now, the difficulty, it seems to me, is that if you have information and fairly detailed information indicates that probably there is no crime being committed and you omit that, then the judicial officer doesn't have access and can't exercise the independent judgment. You're taking that discretion away from the judicial officer. You may well say, as you do today, look, the nature of the patient relationship is transient and we still think that we need to go in. But at least the officer wouldn't feel fooled. I mean, that's the sort of litmus test I have in some of these situations is if I were issuing the warrant, would I be upset that the officers had some information and didn't tell me? And it seems to me that's your situation here a bit. Well, and I think that actually that was addressed adequately by Judge Breyer in his written opinion in that he determined that the information that was included in the arrest affidavit or, excuse me, the search warrant affidavit included the connection with a cannabis club sitting on the board of a club. And Judge Breyer made the determination based on all the evidence presented to him that that is the gist of exactly what you would get from saying, oh, and by the way, in 1998 in Tahoma County, it was determined that there was a caregiver status and a patient status as to this plaintiff or that plaintiff. Judge Breyer's decision did take into account the information that was included and found it would have been the same. It was a non-issue given that... But your argument is it doesn't need to be given at all. That is my argument. Absolutely. Because there's no way of knowing that before the fact. There's no way of knowing unless you can knock on the door and have the people just let you in and do a voluntary search of your garden and establish those things. That's the whole purpose of getting the search warrant, is to find out whether or not, even if you're in compliance as to part of your GROW operation, are you out of compliance as to the rest, which I'll try and pronounce the case, you're Zikinu, recognized you can be in compliance in part and be out of compliance in the other and that the state officers have a right to make that determination. And if you're out of compliance as to even part, you're violating the law. And with that, I'll submit. Thank you. I want to ask you one question. Yes. You take the position, there's something in this complaint about not returning the marijuana and the money and your position as well. They were given notice of the forfeiture and they never acted. That's basically your position. But what do you say about the ruling of the Judge Bopre, was it? Judge Bopre. Yeah. It said, whatever you seize, I want brought into court here. I think that's more probably addressed to the federal attorney because they took possession of the seized property. Okay. Just forget my question. Okay. We'll put it to the federal attorney. I wasn't sure who was a federal attorney, but that's okay. Not I. All right. Thank you, Your Honor. You're for the county and the individuals. Okay. Good morning, Your Honors. May it please the court, Nancy Delaney representing the City of Arcata and Officer Lucas. And this will be very brief unless the court has questions because I've agreed with the U.S. attorney to give away most of my time. But I did hear the appellants discussing Mr. Lucas at length, and so I just wanted to get- Plunge right in. Pardon me? Go ahead. Plunge right in. Yes. What do you want to talk to us about? Pardon me? Go ahead. What do you want to talk to us about? Simply what I want to make sure is clear for the record, Officer Lucas is sitting in his apartment in Arcata, California. It's obvious from the record that Arcata has been very friendly to medical marijuana issues. There's a detailed interview between the chief and Mr. Brown, and Officer Lucas is asked about there being contacts, and would he provide the reports. And indeed, he then sends all of his reports, no dispute, it's included in Mr. Simpich's filings, including the detailed interview that Mr. Brown had given setting forth his cultivation for medicinal purposes activities. That's what Officer Lucas did in this case. Now, there's an effort to go into older issues that may have existed in years past, whether Officer Lucas, as it's described in the brief, it's now said Officer Lucas actually cut the lights. In the briefs, of course, it's described instead as on Officer Lucas' watch, some of Mr. Brown's equipment had been damaged in Arcata. We're talking about years before any of these events. We're not talking about any search warrant application prepared by Officer Lucas. We're not talking about any search conducted by Officer Lucas. The narrow question as to Officer Lucas is, when an officer's called, ask if he's had contact with certain individuals, because the name has come up on the computer system, and then forwards that information, and again, there's no indication that any reports were withheld or any other information. Is that officer somehow then subject to liability, whatever the other issues are with the other defendants? Respectfully, the City of Arcata and Bobby Lucas do not belong in this case or any other regarding the allegations made, and Judge Breyer properly concluded that there was just no basis for liability as to the City and Officer Lucas. Thank you, Counsel. Thank you. We'll hear from the Federal Government. Ms. Arbuckle. May it please the Court, Julie Arbuckle representing Federal Defendants Karen Tandy and John Pickett. The key to plaintiff's claims against the Federal Defendants is very simple. The only claims alleged against the Federal Defendants are purported violations of the United States Constitution, and the law is very clear in this circuit that claims for violation of the Constitution cannot be maintained against Federal employees acting in their official capacity, just in their individual capacity, and only for money damages under the Bivens line of cases. And the cases that have so held in this circuit are Nurse, which is cited in by Judge Breyer in his, in the transcript that the plaintiffs just provided the Court, as well as the Daly Murphy case, which is another Ninth Circuit decision. Here, once Judge Breyer dismissed the Federal Defendants under that line of cases from the constitutional claims, he made clear in his order that the plaintiffs, that his order was only with regard to the Federal Defendants in their official capacity. And that the plaintiffs could have amended, at any time, to add a claim against the Federal Defendants in their individual capacities, but the plaintiffs here voluntarily abandoned any claims that they may have against the Federal Defendants in their individual capacities, because they never served them in their personal capacities, and they never amended their complaint to state any claims against the Federal Defendants in their individual capacities, in spite of the Court's order. And I would refer this Court to the excerpts of record, page 117. It's footnote one of Judge Breyer's order. Makes it very clear that they could have done that. And that is basically the answer to any issues in this case with respect to the Federal Defendants. Yes, I think Judge Breyer wanted you to discuss the merits of the forfeiture a bit on the notice, if you don't mind. Yes. I understand your defenses. Yes. In response to the specific question, I think he asked about the search warrant saying that the property should be returned to the state court judge. There is no case that I could find, and the plaintiffs still cite no case, holding that the issuance of a search warrant alone prohibits the DEA from obtaining evidence of illegal drug trafficking or distribution and forfeiting it. California law does not automatically vest the state court with exclusive jurisdiction. And there are Federal regulations, as well as Federal case law, that allows the DEA to come in when enforcing the Controlled Substances Act and essentially take or adopt property seized pursuant to a Federal search warrant. And actually here, there was, the DEA didn't actually seize any property, they seized currency and I think 10 samples of marijuana. Otherwise, the, all of the items seized pursuant to the search warrant did remain in state custody. So the only items the DEA actually took possession of was currency in order to forfeit it and then 10 samples of marijuana, which aren't even at issue in the, in this litigation. Well, at this juncture, I gather you don't think they have any remedy at all because I assume the statute of limitations is run on the individual defendants and you don't think they're entitled to sue under the Tucker Act in the Court of Federal Claims? Under the Tucker Act? Yes. Well, they've made no attempt to limit their claims to just the $6,027 at all and they still purport to seek in the record as it stands now in their amended complaint injunctive and declaratory relief and that would just not, that would not be available. I would note to the court that there is, under the forfeiture statutes, Section 983, that they could have challenged the forfeiture of the $6,027 and they had a five-year statute of limitations to do that after they received the final seizure notice. And so there may still be time under that statute to do it, but they've been on notice of that since the district court proceeding that that was a remedy and they could have filed a claim under Section 983 at any time, but they haven't done that yet. Further questions? Thank you, counsel. Briefly, I wanted to cite to the court Judge Conte's ruling in his 28 grams case which stated that there's no authority indicating that a failure on the part of the state to protest the federal proceeding or by the state to prosecute allows the district court to assume jurisdiction. And as a result, Judge Conte held that if the federal authorities wanted this money or the DA's office wanted them to have it, they were bound to seek a turnover. And that's our posture on this whole thing, Your Honors. We believe that we do have the right to proceed. We do have the right to pierce the sovereign immunity pursuant to the cases we've cited, the Savage case. This is clearly activity under color of state law. It's based on the very activity around 215 that brought the feds there in the first place. And if I could segue there, I would illustrate that, in fact, going back to the state case, the feds would not have been there except for what happened in Arcata. And that goes back to our First Amendment claim, to make this segue complete. The only reason the feds were there was to rip the pot and run away with it. Because Officer Lucas had tried the same thing and had failed. And in fact, the only document that we don't see in this record that should be in this give them back the pot, give them back the equipment. And the very presence of the feds, we think, just illustrates the strength of our First Amendment claim here, if you will. They wouldn't have been here for any other reason other than to send a message to Mr. Brown saying, shut up and go away, and stop advocating 215. Well, that's all inferential, isn't it? It is. That's precisely what it is. And that's why I point the court to the Mendocino case, because reasonable inference But going back to your federal claims, you don't have any direct evidence of a conspiracy or do I agree? You never have direct evidence of a conspiracy. These concerted action cases are always based on circumstance. Nobody's going to raise their hand and say, that's right, we huddled together and figured out a way to make Jason Brown shut up. The way to make him shut up is by deceiving the judicial officer, by stonewalling on his medical status, and by bringing the feds to make sure the pot is ripped up and it's not returned. How do you get to any liability if you didn't sue them in their individual capacities? Well, we think that under the Tucker Act, under APA, under Savage v. Tone, those are all bases for damages or, in the APA case, specific relief. If the court is- The Tucker Act doesn't give any remedy against individuals, only against the United States, right? 1983 does, however. Let's take your applications one at a time. I don't see how you get there from the Tucker Act. You didn't sue the United States, you sued the officers. The Tucker Act doesn't allow you to sue officers, right? You'd agree with that? I think the court may be right on that, I would have to. I mean, your argument may be that waived immunity, but it doesn't get you where you want to go in this case. Well, we want this- 1983, and you've got to show a joint, you have to show joint action sufficient. And we haven't gotten this far on the Ninth Circuit, so that they're a state actor, right? They're not a state actor. Well, they are a state actor because they are operating under color of state law. And if you look at the Mendocino case number one, the FBI was held in that case to be a state actor. And, well, no, let me reverse field on that. I wouldn't go quite that far. I think the argument can be made that they're acting as a state actor because they're acting in concert with other state actors involving an issue of gaining entry pursuant to a warrant under state law. I think that's the analysis. Well, that's your best argument under 1983. And then the APA doesn't allow you to file an individual action for damages against officers, right? No, you can only get specific relief on that. But that would be enough, Your Honor, we would offer in this instance if we could get the specific relief of getting everything returned. Do you have about 30 seconds? No, I'm good. Thank you. Very good. Case is heard will be submitted. We thank you all for your arguments and we'll be in recess for the morning.
judges: Farris, Thomas, Bright